## THE "LOUISIANA LOTTERY CASES."

### UNITED STATES *v.* DAUPHIN.    (Several Cases.)[1]

*(Circuit Court, E. D. Louisiana.    May 12, 1884.)*

1. **CRIMINAL LAW—REV. ST. § 3894.**

    The "sending" of letters and circulars concerning lotteries, denounced in section 3894 of the Revised Statutes, means the knowingly forwarding or causing to be forwarded through the mail, as matter to be conveyed by mail, *i. e.*, as mail matter, after the prohibited article has been deposited in the mail, and does not include the naked sending towards or to the post-office.

2. **SAME.**

    After the voluntary termination of the custody of a letter by the post-office or its agents, the rights of the proprietor are under the protection of the local law, and not that of the United States, (*U. S.* v. *Parsons*, 2 Blatchf. 107,) and there is no difference in the dominion of the postal laws over a letter before that custody has commenced and after it has ended.

3. **CONSTRUCTION OF STATUTES.**

    In the matter of construction of a revised statute the authority of the original statute is unquestioned.

On Demurrers to Informations.

*A. H. Freeman*, Asst. Atty. Gen., *Albert H. Leonard*, U. S. Atty., and *Francis T. Nichols*, for plaintiff.

*Thos. J. Semmes, George H. Braughn*, and *Joseph P. Hornor*, for defendant.

BILLINGS, J.    The informations in the four cases are identical, each containing three counts, charging a violation of section 3894 of the Revised Statutes.    The offense charged in each count is the sending, with more or less particularity of circumstance, a circular concerning a lottery.    The sending in each count is charged as follows: In the first count, simply that the defendant "unlawfully and knowingly did send to the post-office, at the said city of New Orleans, to be conveyed by the mail;" and in the second and third counts that the defendant did unlawfully and "knowingly send by another person to the post-office in said city, to be conveyed by and in the mail, which said circular letters, at the time the same were so as aforesaid by the said M. A. Dauphin sent to and were deposited in the post-office at said city of New Orleans."    The offense charged in each of the counts is either a naked sending to the post-office by another with the proscribed intent, or a sending to the post-office with the same intent and a subsequent deposit in the post-office, but with no averment that the deposit was otherwise by the procurement of the defendant. Section 3894 is as follows: "No letter or circular concerning lotteries shall be carried in the mail.    Any person who shall knowingly deposit or send anything to be conveyed by mail in violation of this section shall be punishable," etc.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

The validity of the information turns upon the meaning of the word "send;" or, rather, whether the transmission which the statute visits with the penalty is before or after the depositing. If either reading is adopted there is a necessity of supplying an ellipsis, for when the word "send" is used in connection with the mails, the sending may either be "towards" or "to," signifying "into" or "in" the mails. If the meaning is that the sending precedes the deposit, it would follow—indeed it was so admitted in the argument—that sending outside of the mail, the intent being that the thing should ultimately be conveyed by mail, was an offense whether it reached the mail or not. There may be constitutional authority vested in congress, under the grant "to establish post-offices" and post-roads, to create such an offense, though, with reference to the force of a postal criminal statute, extending after letters had left the actual possession of the postal officers, in *U. S.* v. *Parsons* Judge BETTS says: "Legislation of such scope and extent would clearly not be in furtherance of the functions and duties of the post-office department." And again, 2 Bl. 107: "After the voluntary termination of the custody of a letter by the post-office or its agents the rights of the proprietor are under the protection of the local law and not that of the United States." And it is difficult to see any difference in the dominion of the postal laws over a letter before that custody has commenced and after it is ended.

The debates in the United States senate in the years 1835 and 1836 upon the bill to prevent incendiary publications from being transmitted in the mails, which were participated in by Mr. Calhoun, Mr. Webster, Mr. Clayton, Mr. Buchanan, and to which Mr. Davis, of Massachusetts, so essentially contributed, and the bill itself, are most instructive as to the real nature and proper definition of the term "post-office," as used in the constitution, and the extent of the power given to congress over the subject. While there was great conflict of views as to the degree to which the other constitutional guaranties and exemptions qualified the right of government seizure and inspection of papers, it does not appear that any of the senators claimed that the power could be exercised to any degree outside of the physical limits set up in the bill itself, viz., upon mail matter while being received, transmitted, or delivered by the postmasters and mail carriers. See Congressional Debates, (Gale & Seaton's Reg.) vol. 12, pts. 1 and 2. I do not make this reference to show that the law would necessarily be unconstitutional, even if it had the construction that the legislation means a sending which would leave the act unconnected with the mails, but as bearing upon the question of the intention of congress in the use of this word; for, had it here created and punished such an offense, it would be one of the few instances, if not the only instance, in which congress has attempted to regulate the transmission of mail matter on account of what is written or printed, except while in or while physically connected with the

custody of the postal officers, *i. e.*, except while physically in or being deposited or being delivered.

True, the informations have been framed as if this part of the statute had made the offense to be "to send for deposit, followed by a depositing;" but this form of declaring cannot change the statute. If it should be held by the courts that the "sending" intended by the statute preceded or might precede any deposit in the mail, it would leave an attempted but unaccomplished sending—*i. e.*, a sending "towards" or "to," in the sense of "towards," the mail with the intent to have a conveyance by the mail—as unmistakable an offense as sending *into* the mail. But I think the meaning of this enactment is that the sending should follow the deposit, and should be "through" or "in" the mail. It makes the essential ingredients of the sending to be three: (1) Knowledge of the character of the circular; (2) a causing to move forward as matter to be conveyed by mail; and (3) a *violation of this section*. Circulars concerning lotteries, so far as federal law is concerned, may be lawfully sent anywhere, from any point to any point, with any intent, provided it be not *in violation of this section*. "In violation of this section" means in violation of the general and sole prohibition upon which it all rests, and in aid of which its penalties were established. That general prohibition is, "shall not be carried in the mail." No sending could conflict with this inhibition which was not effected in the mail.

It has been urged that these words, "in violation of this section," qualify only the word "anything," and were intended merely to indicate the thing prohibited; *i. e.*, circulars concerning lotteries, etc. But merely dealing with the prohibited thing is not the act constituted a crime. It is dealing with the prohibited thing in the prohibited manner. The prohibited thing must be sent. It can never be questioned that sending, to be made an act cognizable by criminal laws, must be bounded by words which define it, not alone in intent, but which characterize it as necessarily involving motion. There could then be no definite or punishable sending unless it be in violation of this section; that is, the thing sent must be carried or sent in the mail.

In the case of *The Paulina* v. *U. S.* 7 Cranch, 52, the court had to determine the effect of just this qualification upon the meaning of a penal clause. The thing prohibited was the putting on board of goods from one vessel to another. The qualification was "contrary to the provisions of this act, or of the act to which this act is a supplement." The court say, (p. 65:)

"Most apparently, then, both the letter and spirit of the law must be disregarded, or it must be admitted that the putting on board that is rendered culpable must be such a putting on board as is 'contrary to the provisions' of the original or supplementary act."

Though the prohibited thing had been confessedly done, since it had not been done contrary to the provisions of the act, the thing was

held not to be within the statute. The rule which should govern courts in determining in such case the limit of the act declared punishable is thus stated by Chief Justice MARSHALL, (p. 61:)

"But should the court conjecture that some other act not expressly forbidden, and which is in itself the mere exercise of that power over property which all men possess, *might also be a preliminary step to a violation of the law*, and ought, therefore, to be punished for the purpose of effecting the legislative intention, it would certainly transcend its own duties and powers, and would *create a rule*, instead of applying one already made. It is the province of the legislature to declare *in explicit* terms how far the citizen shall be restrained in the exercise of that power over property which ownership gives; and it is the province of the court to apply the rule to *the case thus explicitly described*,—not to some other case which judges may conjecture to be equally dangerous."

It is to be observed that throughout the title, "The Postal Service," the verb, "send," and its past participle, "sent," have an established meaning, and uniformly signify forwarded in the mail through the officers of the government. See Rev. St. §§ 3851, 3909, 3912, 3932, 3937, and 3993. Whereas, the intentional procurement of the conveying of a letter into the mail is described as causing to be deposited. See sections 3887 and 3893. Those who revised the statutes had, therefore, this last form of expression, which they had used in the preceding section, and which they could have used in connection with the word "attempted," instead of the word "send," had they intended to include the act set forth.

The meaning of the section under consideration is equally evident if we consult the statute from which it is derived in the Revision. It was compiled from the act to revise, consolidate, and amend the statutes relating to the post-office department, (section 149, vol. 17, p. 302,) which provides that "it shall not be lawful *to convey by mail*, nor to deposit to be sent by mail, any letters," etc., and that "a penalty is hereby imposed of, etc., upon conviction in any federal court of the violation of this section." The meaning of this original statute could hardly be more fully expressed, or be freer from ambiguity. It creates two offenses,—"the conveying by mail" and "the depositing in a post-office to be sent by mail." Neither of these offenses could include the *sending* towards or to the mail. The sending is the conveying by mail, and that alone. The whole structure and the parts in detail of section 3894 show that this section 149 of the act of 1872 was the portion of the law which was therein brought into the Revision or Compilation. In the matter of construction of a revised statute the authority of the original statute is unquestioned.

In *Dominick* v. *Michael*, 4 Sandf. 409, the court say:

"For nearly half a century it has been a cardinal and controlling maxim that in the construction of a revised act a mere change in the language shall not be regarded ' as evidence of an intention to vary the construction, unless the change is such as to render that intention manifest and certain.' See, also, *Taylor* v. *Delancy*, 2 Caine, Cas. 151, and Chancellor KENT, in *Goodell* v. *Jackson*, 20 Johns. 722. In this last case Chancellor KENT assents to the

doctrine that 'when the law *antecedently to the revision* was settled by clear expression, the mere change of phraseology shall not be deemed a change of the law unless the phraseology *evidently purports* an intention in the legislature to work a change,' and that 'if any doubts are entertained the court is authorized to look at the law as it was before the revision.' "

The original act declared that "to convey by mail," and "to deposit in, to be sent by mail," were prohibited, and that the crime should consist in "the violation of this section." The revised act declared that the specified articles "should not be carried in the mail," and that the crime should consist "in depositing or sending them," as matter "to be conveyed by mail," "in violation of this section." Is it not manifest that while there is a change in the order of words, and, in one or two instances, the substitution of one word for another, and a change in the dependence of sentences, that there is not such "change in the language" as should be "regarded as evidence of intention to vary the statute?"

Both the original and Revised Statutes include letters and circulars. A sealed circular is, for all purposes affecting the postal offices, a letter. But circulars were for the most part unsealed, and their character could, therefore, be ascertained. The much lower postage made their use much more frequent for purposes of advertisement, as distinguished from correspondence, and therefore they stood as the chief means of scattering alluring notices. The prohibition against carrying or forwarding would have little application to letters, but, enforced by vigilant post-offices, would have great efficacy with reference to circulars, which would probably be the great means for diffusing the information sought to be suppressed. The importance of the prohibition against "carrying" would, therefore, be manifest to all who were legislating to secure the object of excluding from the mails circulars belonging to the specified class.

It must not be forgotten that the exclusion of this class of matter from the mail first appeared in the form of a postal regulation, unattended by any imposition or penalty, (Act of 1868, 15 St. p. 196, § 13;) that, subsequently, congress emphasized this regulation by punishing those who deposited and those who conveyed, (17 St. p. 302, § 149;) that no good reason can be assigned why the punishment of those who convey circulars of the prohibited class should be withdrawn; that, on the other hand, a wide void would be made in the system of legislation on this subject unless such punishment be maintained; and that it has been altogether withdrawn from the statute in the Revision, unless the word "sending" means after the depositing has been affected, and through the officers who have custody of the mail.

There are difficulties and doubtless omissions of preventive measures if we adopt any of the proposed constructions; but, considering the greater difficulties which any other construction opposes, I am of the opinion that the proper conclusion is that by the section 3894 the

congress meant to re-enact the then existing law upon the subject, at least without any omission of the chief means of enforcing the entire prohibition, and that the sending denounced and punished is knowingly forwarding or causing to be forwarded through the mail, as matter to be conveyed by mail, *i. e.*; as mail matter, after the prohibited article has been deposited in the mail, and could not include the naked sending to the post-office, which is alone charged in the informations.

Let there be judgment sustaining the demurrers.